William E. Ringel, J.
Defendant’s application to reargue Ms motion to suppress is granted. The facts adduced at the hearing disclose that the defendant was arrested and charged with violation of section 1141 of the Penal Law after he had offered to sell the arresting officer some photographs of nude females which he had displayed for sale.
In the opinion of the officer, the photographs were obscene. The officer had no search or arrest warrant. No evidence was presented to indicate that the photographs had been previously examined and held to be obscene by any Judge.
The sole question presented is whether a police officer, without prior judicial scrutiny of the material in question, may lawfully seize printed matter or photographs, based on his evaluation that these items were obscene and were possessed with intent to sell.
The United States Supreme Court stated in Redrup v. New York (386 U. S. 767) that the conflict between a State’s asserted power to suppress distribution of books and magazines and the guarantees of the First and Fourteenth Amendments is a recurring one.
From the many cases in this area which have come before the courts with respect to the distribution of alleged obscene materials, several basic rules have evolved:
(1) Obscene material does not enjoy any constitutional immunity under the First Amendment (freedom of speech and press) or under the Fourteenth Amendment (due process clause) (Roth v. United States, 354 U. S. 476).
(2) Obscene material is contraband (Marcus v. Search Warrant, 367 U. S. 717). ‘
(3) Obscene material is without redeeming social importance (Roth, ibid.).
(4) The protection of the First Amendment is absorbed into the Fourteenth Amendment (People v. Epton, 19 N Y 2d 496, cert. den. 390 U. S. 29; Gitlow v. New York, 268 U. S. 652).
(5) The guarantees under the Federal Constitution are applicable to the States (Malloy v. Hogan, 378 U. S. 1; Murphy v. Waterfront Comm., 378 U. S. 52).
(6) Although obscene material is contraband, it may not be equated with contraband such as weapons, narcotics, etc., which may be seized out-of-hand (Marcus, supra).
*339 (7) To sustain as lawful the seizure of obscene printed material or photographs, prior judicial scrutiny holding it is obscene is required. The rule protects matter which is not obscene from summary seizure and prevents the police (Marcus, supra) and other governmental agencies (Bantam Books v. Sullivan, 372 TJ. S. 58) from acting as public censors.
(8) The police may not make an ad hoc determination of what is obscene (Marcus, supra).
(9) Search warrants directing the seizure of books and publications must describe with “ the most scrupulous exactitude ” the material to be seized (Stanford v. Texas, 379 U. S. 476; Marcus, supra; A Quantity of Books v. Kansas, 378 U. S. 205; People v. Rothenberg, 20 N Y 2d 35).
(10) Pictures come within the ambit of these rules (Jacobellis v. Ohio, 378 U. S. 184; United States v. 4,400 Copies of Magazines, 276 F. Supp. 902; People v. Rothenberg, supra).
In summary, it may be said: ‘ ‘ The common thread running through recent Supreme Court decisions on the seizure of allegedly obscene matter is that because the line between protected and unprotected speech is so difficult to draw, dissemination of a particular work should be completely undisturbed, at least until an independent determination of obscenity is made by a judicial officer. Complete restraint on any work must await a final judicial determination of obscenity.” (United States v. Brown, 274 F. Supp. 561, 563.)
Such a determination may also be made in a civil proceeding (Kingsley Books v. Brown, 354 U. S. 436).
The same rules apply to seizures made incidental to an arrest for violation of the obscenity statutes. ‘ ‘ This result cannot be avoided by the rubric of a search incident to a lawful arrest. As heretofore discussed, the Supreme Court has apparently determined that borderline speech must be protected by the application of relatively elaborate procedures prior to suppression via seizure. Such procedures are impossible to follow in a seizure incident to arrest.” (United States v. Brown, supra, p. 565.)
The rules outlined above apply equally to so-called ‘ ‘ hardcore pornography.” This must be the rule since that term, although given much prominence in the obscenity decisions (People v. Richmond County News, 9 N Y 2d 578), has never been defined except in very general terms.
That definition, or rather the lack thereof, is best epitomized by Mr. Justice Stewart in his concurring opinion in Jacobellis v. Ohio (supra, p. 197) in which he said: “ It is possible to read *340 the Court’s opinion in Roth v. United States and Alberts v. California ( 354 U. S. 476) in a variety of ways. In saying this, I imply no criticism of the Court, which in those cases was faced with the task of trying to define what may be indefinable. I have reached the conclusion, which I think is confirmed at least by negative implication in the Court’s decisions since Roth and Alberts, that under the First and Fourteenth Amendments criminal laws in this area are constitutionally limited to hardcore pornography. I shall not today attempt further to define the kinds of material I understand to be embraced within that shorthand description; and perhaps I could never succeed in intelligibly doing so. But I know it when I see it, and the motion picture involved in this case is not that. ’ ’
The New York Court of Appeals is similarly of the opinion that the term is imprecise. In People v. Rothenberg (20 N Y 2d 35, 38, 39) the court, in referring to the term “hard-core pornography ” says: “ It is not in compliance with the requirement of the Fourth Amendment to the United States Constitution that the warrant shall ' particularly ’ describe the 1 persons or things to be seized. ’ The basic defect is that the language of the warrant delegates to the police officer executing it the function of determining whether the material is obscene. * * * In urging an affirmance of the judgment of conviction, the People are aware of this difficulty and sought to distinguish the Matherson case upon the ground that its phraseology ‘ indecent books and material ’ is more vague than 1 hard core pornography ’ (People v. Richmond County News, 9 N Y 2d 578). The specifying of ‘ hard core pornography ’ is not enough to define specifically in a search warrant what the police are to look for and seize. ”
People v. Matherson (16 N Y 2d 509) and People v. Reshes (39 Misc 2d 723), upon which the court relied in denying the original motion, have been re-examined. In both cases the arrest was held valid because the arrests, although made without a warrant, were for printed material which prior to the arrest had, in fact, been judicially determined to be obscelie. In Matherson, that determination was made when the search warrant (later found to be defective) was issued. In Reshes, the police were shown copies of material to be seized — materials which had been held obscene in People v. Fried (18 A D 2d 996).
In the instant case, in view of the absence of a prior judicial determination that the photographs were obscene, the prior order of the court denying suppression, dated December 7,1967, is vacated and the motion to suppress is granted.