Argued March 3, reversed and remanded with instructions to
dismiss writ November 5, 1969

STATE EX REL MAIZELS, *Respondent, v.*
JUBA, *Appellant.*

460 P 2d 850

*Jacob B. Tanzer,* Assistant Chief Deputy District Attorney, Portland, argued the cause for appellant. With him on the briefs was George Van Hoomissen, District Attorney, Portland.

*Marvin S. Nepom,* Portland, argued the cause for respondent. With him on the brief were Paul R. Meyer, Leo Levenson, and Kobin & Meyer, Portland.

HOLMAN, J.

This is an appeal from the issuance of a peremptory writ of mandamus by the circuit court.

Petitioner operates a theater in Portland. He scheduled a two-week showing of two films entitled "Love Robots" and "Little Girls." On the first day of the showing a deputy district attorney attended a performance. The deputy thereafter filed an affidavit and made application to a district judge for a search warrant to search petitioner's theater and to seize the films. The ground asserted as a basis for the warrant was the purported dissemination of obscene matter in violation of ORS 167.151. The police,

on the second day of the showing, seized the films pursuant to the warrant without a prior adversary hearing. Petitioner was not arrested. Thereafter, petitioner filed with the district judge a motion to quash the warrant, to suppress the seized films as evidence, and for their return. The principal basis for the motion was his claim that before First Amendment material may be seized on the ground that it is obscene, there must be a prior adversary hearing on that issue. The motion was denied by the district judge, and petitioner then filed the mandamus proceeding in question in circuit court. A peremptory writ issued directing the district judge to quash the warrant and to return the films. The district judge appealed.

The question presented by the appeal is whether mandamus brought in the circuit court was a proper remedy to compel the district judge to vacate his ruling. The district judge contends that mandamus does not lie because the writ cannot be used to dictate the exercise of judicial judgment unless the issue is so clear as to reduce the judicial act to the quality of a ministerial one. He relies on numerous decisions of this court, including *State ex rel v. Malheur County Court,* 54 Or 255, 101 P 907, 103 P 446 (1909). This was a case in which the County Court of Malheur County refused to except the City of Vale from the application of a county prohibition law. In holding that mandamus would not lie to test the propriety of the county court's ruling, this court said at 259:

"* * * In the present case the court was confronted with a delicate question of law. If the City of Vale was exempt, by the conditions of its charter, from the operation of the local option law, it was the duty of the court to make that exemp-

tion apparent in its order. If it was subject to the provisions of that law, it was its duty to make an order which would apply to the county as a whole. A question of law was before it to be decided, and, in passing upon it, the court acted just as much in a judicial capacity as we do in passing upon the same question on appeal. We think the court below was correct in holding that it had no power to compel the county court to amend its order on prohibition."

He also relies on the following language from *State ex rel v. Ekwall*, 144 Or 672, 681, 26 P2d 52 (1933):

"* * * There was also a dispute upon the question of whether service upon Smith, its president, by reason of his being in Oregon and transacting business for the corporation at the time the service was made, was valid. The determination of these questions required the exercise of judgment upon the part of the trial court in deciding whether the motion to quash should be overruled or sustained, and, in making such determination, the court was acting judicially and not performing a mere ministerial function. * * *."

A no less august body than the United States Supreme Court has used the following similar language in *Wilbur v. United States*, 281 US 206, 218, 50 S Ct 320, 74 L ed 809 (1930):

"* * * Where the duty in a particular situation is so plainly prescribed as to be free from doubt and equivalent to a positive command it is regarded as being so far ministerial that its performance may be compelled by mandamus, unless there be provision or implication to the contrary. But where the duty is not thus plainly prescribed but depends upon a statute or statutes the construction or application of which is not free from doubt, it is regarded as involving the character of

judgment or discretion which cannot be controlled by mandamus." (footnotes omitted).

The issue thus drawn is whether, where there is no dispute in the facts, mandamus will lie to decide in a certain way an especially complicated question of law, the answer to which is in extreme doubt and the solution of which requires the use of legal judgment and acumen. The Oregon statute on mandamus, ORS 34.110, is as follows:

> "A writ of mandamus may be issued to any inferior court, \* \* \* to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, \* \* \* but though the writ may require such court, \* \* \* to exercise its \* \* \* judgment, or proceed to the discharge of any of its \* \* \* functions, it shall not control judicial discretion. The writ shall not be issued \* \* \* where there is a plain, speedy and adequate remedy in the ordinary course of the law."

The statements of this court in its decisions concerning the use of mandamus have been fairly uniform. Generally, the court has said that when the facts are not in dispute and there is a clear rule of law requiring the matter to be decided in a certain way, mandamus will lie. It has also said that mandamus will not lie to control the exercise of discretion or judgment. While, at times, as previously demonstrated, the court has refused the use of mandamus because of difficult legal problems being involved, more frequently it has used the writ to decide problems where the law was far from clear and where the exercise of legal judgment was required for a solution. As an illustration, this court has often used the writ to decide difficult questions of law involving the adequacy of substituted service of summons. *State*

*ex rel Carroll v. Redding,* 245 Or 81, 418 P2d 846 (1966); *State ex rel v. Latourette,* 168 Or 584, 125 P2d 750 (1942); *State ex rel Hupp etc. Corp. v. Kanzler,* 129 Or 85, 276 P 273 (1929); *State ex rel Sullivan v. Tazwell,* 123 Or 326, 262 P 220 (1927). The cases in which the court has so used mandamus are not limited to those testing the adequacy of substituted service of summons. See the following cases where difficult questions of law have been decided in the interpretations of statutes and the constitution: *State ex rel v. Malheur County Court,* 185 Or 392, 203 P2d 305 (1949); *State ex rel Pierce v. Slusher,* 119 Or 141, 248 P 358 (1926); *City of Astoria v. Cornelius et al,* 119 Or 264, 240 P 233 (1925); *Peterson v. Lewis,* 78 Or 641, 154 P 101 (1915); *Crawford v. School District No. 7,* 68 Or 388, 137 P 217, 50 LRA (NS) 147 (1913); *State v. Ware,* 13 Or 380, 10 P 885 (1886).

It is plain, regardless of what this court has said to the contrary, that mandamus has repeatedly been used to require public officers, including inferior courts, to act in a certain way where the applicable law governing their actions was legitimately in dispute. There is ample authority elsewhere that justifies this use of the writ. F. Ferris, Extraordinary Legal Remedies § 210 (1926), has the following statement:

> "Notwithstanding that courts will not grant mandamus to control discretion, the rule does not apply to preliminary questions of law. It applies only to the act to be commanded by the writ.* The character of a purely preliminary question, though judicial, does not test the right to mandamus because the decision of such a question is a mere incident leading up to the main function or act.*" (*footnotes omitted).

In *Poucher v. Teachers' Retirement Board*, 130 Misc 896, 225 NYS 176, 178-79 (1927), the court used the following language:

"The sole question, then, is one of law,  *  *  *."

   *   *   *   *   *

"*  *  * [R]espondent contends that mandamus will only lie where there is a clear legal right, and as an important question of law is involved, which admits of a reasonable doubt or controversy, the petitioner should be relegated to an action at law against the retirement board. There is no reason why difficult questions of law cannot be determined upon this application, as well as in an action at law. The clear legal right referred to in the cases such as Matter of Whitman, No. 1, 225 N.Y. 1, 121 N.E. 479, means a right which is inferable as a matter of law from uncontroverted facts, regardless of the difficulty of the legal question to be decided.  *  *  *."

For similar language, also see *Stewart v. Wilson Printing Co.*, 210 Ala 624, 627-28, 99 So 92, 96 (1924); *Robinson v. Enking*, 58 Idaho 24, 31-32, 69 P2d 603, 606 (1937); *Construction Co. v. Sedgwick County*, 100 Kan 394, 396, 164 P 281, 282-83 (1917); *Cahill v. Mayor and City Council of Baltimore*, 173 Md 450, 455, 196 A 305, 307 (1937); *Perkins v. Burks*, 336 Mo 248, 254, 78 SW2d 845, 848 (1934); *Fooshee v. Martin*, 184 Okla 554, 557, 88 P2d 900, 903 (1939); *State v. Town Council South Kingstown*, 18 RI 258, 266, 27 A 599, 602, 22 LRA 65 (1893). Finally, the following language is found in 55 CJS Mandamus § 53 (1948):

"A *'clear legal right,'* within the meaning of the rule under consideration, means a right clearly founded in, or granted by, law;* a right which is inferable as a matter of law from uncontroverted facts regardless of the difficulty of the legal question to be decided.  *  *  *." (*footnote omitted).

■ It appears that much of the difficulty in the case law revolves around the use of the terms "discretion" and "judgment"; *i.e.,* in the case of a judicial officer, "judicial discretion" as differentiated from "judicial judgment" or "acting judicially." They have been confused and used interchangeably. "Discretion" refers to the power or privilege to act unhampered by a legal rule. It describes a situation where a choice can be made among several courses of action, any one of which is legally permissible and not subject to review. In such a situation mandamus or any other method of review is inappropriate. The present case does not pose such a situation. Petitioner either is entitled to have the warrant quashed and his property returned or he is not. There is only one legally permissible answer. The exercise of "judgment" means the formation of an opinion concerning something by exercising one's mind upon it. Some courts, including this court, have, at times, used the terms interchangeably and, therefore, have erroneously said that mandamus will not lie to decide difficult questions of law because the exercise of judgment, judicial or official, was necessary for their solution. *State ex rel Ricco v. Biggs,* 198 Or 413, 422, 255 P2d 1055, 38 ALR2d 720 (1953); *State ex rel Ekwall,* 144 Or 672, 681, 26 P2d 52 (1933); and *State ex rel Malheur County Court,* 54 Or 255, 258, 101 P 907, 103 P 446 (1909).

■ It is also apparent that in a mandamus context, "clear rule of law" and "clear legal right" have been used erroneously at times to describe a situation where there can be no dispute as to the proper legal theory rather than a situation where a right is inferable as a matter of law from uncontroverted facts. See *Poucher v. Teachers' Retirement Board, supra,* and 55 CJS Mandamus § 53 (1948). We are now satis-

fied that in an otherwise proper case, mandamus may be used to decide disputed and difficult questions of law.

This brings us to the additional requirement for the use of the writ of mandamus, that there be no "plain, speedy and adequate remedy in the ordinary course of the law." ORS 34.110, *supra*. There is no doubt that the effect of its use in this case amounts to an interlocutory appeal of an important legal question involved in any criminal proceeding arising out of the showing of the films. This raises the question whether the right to an appeal from a subsequent conviction is a speedy and adequate remedy. Petitioner claims that it is not. He urges that a First Amendment right has been violated in a manner amounting to prepublication censorship and, therefore, the use of mandamus is justified. He argues that the dissemination of information by the showing of the films has been foreclosed by their seizure and, if petitioner is proven ultimately to be correct in his contention that the seizure was illegal, the use of mandamus will permit an earlier resumption of their showing, thus protecting not only petitioner's right to show the film but the public's right to see it.

Experience indicates that the average criminal case is brought to trial in three months in Multnomah County.[①] The disposition of this mandamus proceeding at the circuit court level took 18 days. Presuming that an appeal to this court from a conviction would have consumed the same time as has the appeal from the disposition of the mandamus proceeding, mandamus could result in a net time saving of approximately

---

[①] Fifteenth Annual Report Relating to Judicial Administration in the Courts of Oregon (1968).

2½ months. As a practical matter, the trial record from a conviction ordinarily includes a transcript of testimony, and such a record normally takes more time to prepare than does the record in a mandamus proceeding. Therefore, the time saving by way of mandamus may be considerably more than 2½ months.

■ In deciding if a proceeding in the nature of an interlocutory appeal should be allowed, whether by way of mandamus or otherwise, courts must balance considerations of judicial administration with petitioner's choice of a remedy. One consideration is whether or not more litigation and expense to the parties as well as burden on the courts are likely to result from interlocutory appeals. There is a difference between using mandamus to decide the basic dispute between the parties and using it to decide an important but possibly nonconclusive issue in a broader controversy. The basic question is whether or not petitioner violated the criminal law. The ruling on mandamus concerning the validity of the seizure of petitioner's films may or may not be fatal to the prosecution, depending on which way the ruling is made; and, if the ruling is against the state, depending also upon the other evidence the state may have of petitioner's guilt. In no event is it, strictly speaking, conclusive on the ultimate issue of guilt or innocence.

In the present case, if the magistrate's refusal to quash the warrant is a ruling that must be tested by an appeal from a judgment of conviction, the legality of the seizure might never arise in this court. There would be three opportunities for the litigation to be otherwise disposed of at the trial level: 1) the failure of the grand jury to indict; 2) the granting of a motion to quash the evidence by the trial court; and 3) the failure of the jury to convict. Any one of these

dispositions would result in the restoration to petitioner of his films, and no appeal by the state would lie. Such a disposition would be much faster and more effective than a disposition by way of mandamus which would almost always go the appellate route.

A situation almost identical with the present case occurs when the propriety of searches and seizures is tested in the face of claimed Fourth Amendment violations in which there is no dispute concerning the facts. In such situations, in this state, defendants have resorted to an appeal to protest a lower court's ruling on the propriety of the seizure. We know of no instance where this court has permitted such a test by way of mandamus. Similarly, mandamus has not been available to test the propriety of a trial court's ruling on demurrer that an indictment is sufficient. The litigation continues and the ruling is tested by appeal if conviction results. If there is no conviction, the issue is moot. In a criminal litigation context, an appeal has heretofore been considered an adequate remedy in similar situations.

In addition, we believe the present use of mandamus would be detrimental to a prompt trial. The accomplishment of justice may be defeated by the delay of the ultimate trial of the case until an issue of law has been decided which will almost certainly be appealed to the Supreme Court. The delay caused by the present appeal is a graphic illustration. Also, it must be remembered that mandamus, if used in this manner, can be a two-edged sword. If petitioner is permitted to use mandamus to test the propriety of the magistrate's ruling, in fairness, it is difficult to say that the state may not also do so if the ruling is adverse to it.

■ Petitioner's use of mandamus in the present case

would afford him no means of securing the return of his film with sufficient promptness to allow him to resume his two weeks' showing. The state and petitioner are still litigating concerning it. The sole First Amendment effect of the use of mandamus, if successful, would be to hasten by three or four months the time at which the petitioner could eventually resume the showing of *that particular copy* of the film. The possible benefits to be bestowed by mandamus are too minimal to constitute a sufficient reason to deviate from established methods of testing the legality of similar police activity in criminal cases.

This court by decision and the legislature by statute have a long record of regarding the device of an interlocutory appeal with disfavor. See *Dlouhy v. Simpson Timber Co.*, 247 Or 571, 431 P2d 846 (1967), and cases and statutes cited therein.

■ Petitioner filed a motion to dismiss the district judge's appeal. The motion was denied with leave to renew the motion in petitioner's brief and upon oral argument. Petitioner claims that this court does not have jurisdiction of the appeal because the district judge failed to name petitioner in his notice of appeal in conformance with ORS 19.029(2). The title of the case contained in the notice did include petitioner's name. We believe this was sufficient compliance with the statute. No one could possibly have been misled.

The judgment of the trial court is reversed and remanded with instructions to dismiss the writ.

McALLISTER, J., concurring.

This is not an instance of prior restraint such as censorship. No action was taken to restrain petitioner from obtaining additional copies of the films and continuing to show them. In the absence of any showing

to the contrary we may assume that he was able to do so.

Neither is this a *de facto* censorship. If the petitioner has not shown the films during the pendency of this proceeding his restraint was self-imposed. On motion of the *petitioner* the circuit court on February 5, 1968, ordered the district attorney to retain custody of the seized films and not to show them to any person or use them for any purpose whatever until further order of the court. The alternative writ of mandamus discloses that a similar restraint was imposed on the district attorney in the district court.

The films involved in this case had been exhibited and this was a routine "after the event"[1] prosecution by the state in the usual course of its criminal justice procedure. The opportunity to show the films "and then raise the claim of nonobscenity by way of defense to a prosecution for doing so"[2] was afforded this petitioner. If he elected to have the criminal prosecution abated during the pendency of this proceeding he has waived any right to urge "prior re-

---

[1] A Quantity of Books v. Kansas, 378 US 205, 84 S Ct 1723, 12 L ed 2d 809 (1964). Harlan, J., dissenting, at 819-820, as follows:

"In the typical censorship situation material is brought as a matter of course before some administrative authority, who then decides on its propriety. This means that the State establishes an administrative structure whereby all writings are reviewed before publication. By contrast, if the State uses its penal system to punish expression outside permissible bounds, the State does not comprehensively review any form of expression; it merely considers after the event utterances it has reason to suppose may be prohibited."

[2] Marcus v. Property Search Warrant, 367 US 717, 81 S Ct 1708, 6 L ed 2d 1127, 1139 (1961), quoted with approval by Brennan, J., in A Quantity of Books v. Kansas, supra n 1, 12 L ed 2d at 813, in part as follows:

"* * * An opportunity . . . to circulate the [books]

straint." There is no need in this case for the extraordinary remedy of mandamus.

I concur.

O'CONNELL, J., dissenting.

We may assume that the circuit court issued the writ of mandamus on the First Amendment ground stated in Maizels' petition for the writ. On appeal the state does not contend that the prohibition against prior restraint is inapplicable in the present case, but argues only that mandamus is not the proper remedy to raise the constitutional question.[①]

The majority opinion uses this same reasoning, although not accepting the state's argument that mandamus will lie only if there is a "clear rule of law" defining the petitioner's rights.

. . . and then raise the claim of nonobscenity by way of defense to a prosecution for doing so was never afforded these appellants because the copies they possessed were taken away. * * *"

① The constitutional issue not raised on appeal is whether an adversary hearing is necessary prior to the seizure of an allegedly obscene motion picture. In A Quantity of Books v. Kansas, 378 US 205, 84 S Ct 1723, 12 L Ed2d 809 (1964) the court said that an adversary hearing was necessary prior to the seizure of certain books. Only four of the nine judges sitting on the case signed the opinion.

Some courts, relying upon A Quantity of Books v. Kansas, *supra,* have held that a hearing prior to seizure of a film is necessary to satisfy the First Amendment. See Cambist Films, Inc. v. State of Illinois, 292 F Supp 185 (N D Ill 1968) (magistrate issuing the warrant actually attended the film); People v. Kozak, 288 NYS2d 692, 56 Misc2d 337 (1968) (rule applied where peddler sold obscene pictures to policeman on street).

Some courts have refused to apply the rule where the problem of law enforcement would be acute. See Metzger v. Pearcy, 393 F2d 202 (7th Cir 1968) (police allowed to retain one copy of film for investigation despite fact that no adversary hearing had been granted). See also Flack v. Municipal Court for Anaheim-Fullerton J.D., 66 Cal2d 981, 59 Cal Rptr 872, 429 P2d 192 at footnote 10 (1967).

·The majority reasons that mandamus is not the proper remedy in the present case because it would result in an interlocutory appeal, and that even though Maizels' freedom of expression was inhibited to some extent, "the First Amendment aspect of the case, when weighed against the other considerations discussed here, is not sufficiently important to justify the use of mandamus in a manner that amounts to an interlocutory appeal."

This strikes me as a rather novel treatment of First Amendment rights. Ordinarily freedom of expression is protected unless there is some transcendent social interest (frequently expressed in terms of "a clear and present danger") which needs to be served even at the cost of inhibiting free expression. The majority treats the procedural inconvenience sometimes (but not always) associated with interlocutory appeals as an evil of such magnitude that we are justified in inhibiting freedom of expression to avoid it. I regard that as a clear distortion of constitutional principle.

There is language in Lee Art Theatre v. Virginia, 392 US 636, 88 S Ct 2103, 20 L Ed2d 1313 (1968) indicating that the court might now be satisfied if the prior hearing is *ex parte* only. However, federal district court cases subsequent to the *Lee* decision have rejected this interpretation of the case. Tyrone, Inc. v. Wilkinson, 294 F Supp 1330 (E.D. Va. 1969); Cambist Films, Inc. v. State of Illinois, 292 F Supp 185 (N.D. Ill. 1968).

It has been contended that a distinction should be made between prior restraints on written material and on movies. See Judge Lumbard's dissent in United States v. One Carton Positive Motion Picture Film Entitled "491", 367 F2d 889, 905 (2d Cir 1966), suggesting that the harmful potential of the film media justifies greater restraints. *Cf.*, Flack v. Municipal Court, *supra* 66 Cal2d at 989, footnote 7. In Freedman v. Maryland, 380 US 51, 85 S Ct 734, 13 L Ed2d 649 (1965) the Supreme Court recognized that there are distinctions among the free speech protections to be afforded various media, and suggested that some prior restraints might be more acceptable in the area of films.

There is a more egregious error in the majority's reasoning. That error is in treating Maizels' assertion of his right of free expression without prior restraint as if it were an incident to the criminal charge of disseminating obscene material. The issue of Maizels' guilt and the issue of the alleged violation of his constitutional rights are two distinct issues. Maizels has the right to litigate the constitutional issue separately. If the constitutional issue is treated as an appendage to the criminal prosecution, then, of course, an appeal on that issue before the issue of guilt is adjudicated assumes the form of an interlocutory appeal. It does not assume that form if the constitutional issue is treated separately, as it should be.

We have previously recognized the appropriateness of mandamus as a remedy to raise a constitutional issue separately from other issues in a case. In *State ex rel Ricco v. Biggs,* 198 Or 413, 425, 255 P2d 1055 (1953), we said:

> "The question before us for decision on the merits involves constitutional questions affecting the rights of plaintiff. If she is correct in her contentions, then she is entitled to the immediate protection of her constitutional rights without the contingency and expense of an appeal to the Supreme Court after conviction. Straub v. State of Oregon et al., 121 Or 451, 255 P 897."

The majority opinion states that "[t]he sole First Amendment effect of the use of mandamus would have been to hasten by three or four months the time at which * * * [Maizels] could eventually resume showing the film." If Maizels had sought a writ of mandamus from this court rather than from the circuit court, it would have been possible for him to get immediate relief. Under Rule 49 of our Rules of Pro-

cedure we may issue writs of original jurisdiction immediately upon application.[2] But even if there is a substantial delay in issuing the writ, whether in this court or in the circuit court, the petitioner is entitled to seek relief through the writ if that procedure provides a speedier remedy than that provided through the usual course of litigation and appeal.[3]

The inhibition imposed by the state upon a citizen's rightful freedom of expression should be limited to the shortest possible period of time. The delay in lifting the restraint may render untimely the message which the film or other media purports to convey. Mandamus should be available to avoid such delay.

GOODWIN and DENECKE, JJ., join in this dissent.

---

[2] "All applications for writs of original jurisdiction must be served upon the adverse party together with a typewritten or printed memorandum of the points involved and authorities relied upon. In addition to such matters as may be required by statute, every petition shall state the reasons why such application was not made to the circuit court. Such application and memorandum, accompanied by eight copies thereof, shall be filed with the court. Except in cases in which the court shall assume jurisdiction upon presentation of the application, the adverse party may, within five days from date of service thereof, serve and file a memorandum brief together with eight copies in opposition to the application for the writ. The application will then be considered by the court without oral argument unless otherwise ordered. If the court assumes original jurisdiction, briefs, which may be typewritten in conformity with Sections 2 and 4 of Rule 11, must be filed within such time as shall be fixed by the court. The original brief with proof of service endorsed thereon, together with 25 copies, shall be delivered to the Clerk." Supreme Court of Oregon Rules of Procedure, Rule 49 (August 1, 1967).

[3] "It has been pointed out that the extraordinary writs, particularly mandamus, provide considerable flexibility in solving difficult cases arising from application of the final judgment rule. When the circumstances of the case justify it, the equivalent of an appeal may be had prior to final judgment through the use of mandamus." Comment, The Writ of Mandamus—Obtaining Judicial Review of the "Non-Appealable" Interlocutory Order, 6 Kan L Rev 78 at 88 (1957).