No. 12　　　　　　May 2, 2024　　　　　　249

IN THE SUPREME COURT OF THE
STATE OF OREGON

HOTCHALK, INC.,
both individually and derivatively on
behalf of Concordia University,
aka Concordia University—Portland,
*Plaintiff-Relator,*

*v.*

LUTHERAN CHURCH—MISSOURI SYNOD;
Lutheran Church Extension Fund—Missouri Synod,
Concordia University System;
Concordia University, St. Paul; Concordia University,
aka Concordia University—Portland;
Charles E. Gerken; Kathleen Hone; Terry Wilson;
Jerry Baltzell; David O. Berger; Michael Borg;
Charles E. Brondos; Gerald Koll; Paul Linnemann;
Jeff Oltmann; Kurt Onken; Timothy Pauls; Bev Peloquin;
Rod Wegener; Sam Wiseman; Brian T. Yamabe;
Thomas John Zelt;　Thomas Ries; Richard Doughty;
Concordia Foundation; Chris Dunnaville;
George Thurston; Lutheran Church Extension Fund;
John Andrea,
*Defendants-Adverse Parties.*
(CC 20CV15620) (SC S069765)

Original proceeding in mandamus.*

Argued and submitted June 22, 2023.**

James T. McDermott, McDermott Weaver Connelly Clifford LLP, Portland, argued the cause and filed the briefs for plaintiff-relator. Also on the briefs was Gabriel M. Weaver.

_____

＊ On petition for writ of mandamus from an order of Multnomah County Circuit Court, Eric L. Dahlin, Judge.

＊＊ Bushong, J., did not participate in the consideration or decision of this case. Nakamoto, J., Senior Judge, Justice pro tempore, participated in oral argument, but did not participate in the consideration or decision of this case.

Timothy R. Volpert, Tim Volpert. P.C., Portland, argued the cause and filed the brief for defendant-adverse party Lutheran Church—Missouri Synod. Also on the brief were Thomas L. Hutchinson and Laura C. Caldera Loera, Bullivant House Bailey PC, Portland.

In a combined brief, Rian Peck, Visible Law LLC, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association; Peter Janci, Crew Janci LLP, Portland, filed the brief for *amici curiae* CHILD USA, Zero Abuse Project, and Oregon Abuse Advocates & Survivors in Service, with Shiwanni Johnson, Crew Janci LLP, also on the brief; Meg Garvin, The National Crime Victim Law Institute at Lewis & Clark Law School, filed the brief for *amicus curiae* The National Crime Victim Law Institute; and Kristian Roggendorf, The Zalkin Law Firm, San Diego, California, filed the brief for *amicus curiae* The National Center for Victims of Crime.

Colton L. Stanberry, The Becket Fund for Religious Liberty, Washington, D.C., filed the brief for *amicus curiae* The Jewish Coalition for Religious Liberty. Also on the brief were Eric C. Rassbach and Nicholas R. Reaves.

Herbert G. Grey, Portland, filed the brief for *amici curiae* Religious Organizations the General Conference of Seventh-Day Adventists, Queens Federation of Churches, and The Church of Jesus Christ of Latter-day Saints. Also on the brief were Gene C. Schaerr and James C. Phillips, Schaerr | Jaffe LLP, Washington, D.C.

Before Flynn, Chief Justice, and Duncan, Garrett, DeHoog, James and Masih, Justices, and Walters, J., Senior Judge, Justice pro tempore.**

JAMES, J.

The alternative writ of mandamus is dismissed as improvidently allowed.

**JAMES, J.**

HotChalk, LLC[1] filed suit against the Lutheran Church—Missouri Synod (Synod) and 22 other defendants, alleging breach of contract and fraud, among other claims, in the closure of Concordia University - Portland (the university). HotChalk alleges that the Synod orchestrated the university's closure to financially enrich itself and its affiliates while freezing out the university's creditors. During the course of discovery, the Synod sought a protective order under ORCP 36 C to shield from disclosure a subset of documents related to internal religious matters. The trial court conducted *in camera* review, then issued the protective order—in essence, denying a motion to compel discovery of those documents. HotChalk filed a petition for mandamus, and we issued an alternative writ. As we now explain, our statutory authority to issue a writ of mandamus is limited: "[A] writ shall not be issued in any case where there is a plain, speedy, and adequate remedy in the ordinary course of the law."[2] ORS 34.110. Because we conclude that HotChalk has not established that the normal appellate process would not constitute a plain, speedy, and adequate remedy in this case, we dismiss the alternative writ as improvidently allowed.

## I.   BACKGROUND

We take the facts from the record in the underlying trial court proceedings. *Barrett v. Union Pacific Railroad Co.*, 361 Or 115, 117 n 1, 390 P3d 1031 (2017). In 2018, HotChalk and the university entered into a 20-year contract—the Administrative Services Agreement (ASA)—under which the parties agreed to share costs and tuition revenue to support and grow the university's educational programs. The ASA required the university to make weekly revenue share payments to HotChalk. In return, HotChalk was responsible for a proportional amount of operational expenses and for providing services to support the university's marketing,

---

[1] HotChalk was originally registered as a corporation but has since changed corporate form to a limited liability company.

[2] We are not called upon to decide, and do not decide, whether this court's constitutional mandamus authority is so limited, *see* Oregon Const, Art VII (Amended), § 2 ("[T]he supreme court may, in its own discretion, take original jurisdiction in mandamus[.]").

recruiting, enrollment, student support services, and information technology.

After that contract was executed, the Synod—which is a synodical union of certain Lutheran congregations—closed the university. HotChalk filed this civil action against the Synod raising claims that focused on the alleged role that the Synod played in the university's closure. HotChalk sent the Synod its first request for production, requesting that the Synod produce all Synod board meeting minutes, all communications between the defendants, all documents and communications related to the university's closure, and any documents and communications concerning HotChalk. After the parties agreed on search terms, the Synod produced more than 33,000 documents, including handbooks, bylaws, other governing documents for the Synod and its religious affiliates, and final minutes of its Board of Directors meetings since 2016.[3]

The Synod moved under ORCP 36 C for a protective order limiting the scope of permissible discovery by prohibiting HotChalk "from discovering (1) internal church communications related to religious doctrine; (2) internal church communications regarding church governance; and (3) internal church communications regarding employment decisions, including who, if anyone, should be approved as the president of [the university]."[4] The Synod argued that the production of those "private religious communications" would violate the Synod's First Amendment right to freely exercise its religious beliefs, including church governance and selection of ministers and other employees. The Synod argued that the framework articulated by the Ninth Circuit Court of Appeals in *Perry v. Schwarzenegger*, 591 F3d 1147 (9th Cir 2010), applied to this case. Under that framework, the party opposing discovery must make a "*prima facie*

---

[3] By the time of this mandamus proceeding, the Synod had produced "about 180,000 documents" in response to HotChalk's requests for production. The total ultimately withheld pursuant to the trial court's protective order was roughly 1500, approximately 0.83% of the total discovery in the case.

[4] Another defendant, Concordia University System (CUS), joined the Synod in the motion for a protective order. CUS advanced the same arguments as the Synod and was ultimately subject to the trial court's protective order before the trial court granted CUS's motion to dismiss. HotChalk is currently pursuing an appeal of that dismissal order in the Court of Appeals (A179825).

showing of arguable First Amendment infringement." *Id.* at 1160.[5] After that showing has been made, the burden then shifts to the party requesting discovery to show, among other things, that the information being sought is "highly relevant" to the requesting party's claims and that discovery would not unduly infringe on protected activity. *Id.* at 1161.

In response, HotChalk argued that the trial court should deny the motion for a protective order because there was no First Amendment privilege for the documents that the Synod sought to protect. Instead, HotChalk argued that the trial court should apply the regular discovery standard provided in ORCP 36 B(1), which allows parties to "inquire into any matter, not privileged, that is relevant to the claim or defense of the party seeking discovery."[6] Under that rule, discovery is not limited to information that would be admissible at trial "if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

During a hearing on the Synod's motion for a protective order the trial court equated the Synod's motion to a motion under ORCP 36 C to restrict discovery "to protect a party or person from *** embarrassment."[7] Rather than issuing any substantive rulings, the trial court deferred

---

[5] In *Perry*, the Ninth Circuit's reasoning relied solely on case law dealing with associational rights protected under the First Amendment. *Id.* at 1160-61. Because we decide this case on jurisdictional grounds, we do not decide whether *Perry* can be appropriately applied to other First Amendment rights, including those at issue in this case.

[6] ORCP 36 B(1) provides:

"For all forms of discovery, parties may inquire regarding any matter, not privileged, that is relevant to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things, and the identity and location of persons having knowledge of any discoverable matter. It is not a ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

[7] ORCP 36 C provides, in part:

"On motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending may make any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including *** that the discovery not be had."

full argument and decision until it could perform *in camera* review of the withheld documents. The trial court ordered the Synod to compile a numbered list of those documents so that it could randomly select a subset of them for review.[8]

After completing its final *in camera* review, the trial court granted the Synod's motion for a protective order. After some further hearings clarifying the order, HotChalk ultimately filed a timely petition for mandamus in this court. This court issued an alternative writ of mandamus directing the trial court to either vacate its order or show cause why the trial court should not do so. The trial court declined to vacate its order. As a result, the parties proceeded to argument in this court. Among other issues addressed in the briefing, the Synod argued that the writ should be dismissed because HotChalk has a plain, speedy and adequate remedy in the ordinary course of the law.

## II.   ANALYSIS

"Mandamus is an extraordinary remedy and serves a limited function." *Lindell v. Kalugin*, 353 Or 338, 347, 297 P3d 1266 (2013). ORS 34.110 governs the issuance of a writ and provides, in part:

> "A writ of mandamus may be issued to any inferior court *** to compel the performance of an act which the law specially enjoins ***; but though the writ may require such court *** to exercise judgment, or proceed to the discharge of any functions, it shall not control judicial discretion. The writ shall not be issued in any case where there is a plain, speedy and adequate remedy in the ordinary course of the law."

To determine whether mandamus will lie, we engage in a two-pronged inquiry. First, we assess whether the trial court had a legal duty to act in a certain way. *State ex rel. Maizels v. Juba*, 254 Or 323, 327, 460 P2d 850 (1969)

---

[8] Initially, the Synod had withheld approximately 2,017 documents. While compiling the numbered list for the trial court, the Synod removed several documents from its asserted privilege because they were (1) third-party documents or (2) publicly available. The Synod also discovered and produced two documents that mentioned the university's finances. Ultimately, the Synod provided the trial court with a list of 1,534 documents that it sought to withhold from production.

("Generally, the court has said that when the facts are not in dispute and there is a clear rule of law requiring the matter to be decided in a certain way, mandamus will lie."). Accordingly, mandamus is appropriate to review only obligatory—not discretionary—action. *See, e.g.*, *State ex rel. Ricco v. Biggs*, 198 Or 413, 421-22, 255 P2d 1055 (1953), *overruled on other grounds by Maizels*, 254 Or 323 ("It has become hornbook law in this state that the writ of mandamus cannot be used as a means of controlling judicial discretion, nor as a substitute for appellate review. The statute restricts its use to instances involving the performance of an act which the law specially enjoins. Mandamus will never lie to compel a court to decide a matter within its discretion in any particular way.").

The second preliminary question that we consider is whether the party seeking the writ has other means of recourse and, if so, whether the relief provided thereby is "plain, speedy, and adequate[.]" ORS 34.110; *see also Durham v. Monumental S. M. Co.*, 9 Or 41, 44 (1880) ("The existence, or non-existence, of an adequate and specific remedy at law under the ordinary forms of legal procedure, is * * * one of the first questions to be determined in all applications for the writ of mandamus[.]").

The fact that this court issued an alternative writ at the outset of a mandamus proceeding does not resolve whether those preliminary requirements are met. *See, e.g.*, *Fredrickson v. Starbucks Corp.*, 363 Or 810, 813, 429 P3d 727 (2018) (dismissing writ after briefing and argument); *State ex rel. Portland Habilitation Center, Inc. v. PSU.*, 353 Or 42, 51 n 4, 292 P3d 537 (2012) (considering a circuit court's issuance of an alternative writ and explaining that the circuit court was required to dismiss that writ if it later determined that the preliminary requirements were not met); *State ex rel. Le Vasseur v. Merten*, 297 Or 577, 582, 686 P2d 366 (1984) (dismissing alternative writ after concluding that relators had an adequate remedy at law); *State ex rel. Boe v. Straub*, 282 Or 387, 389-90, 578 P2d 1247 (1978) (same).

Before us, the Synod argues that HotChalk is not entitled to mandamus relief because the issues that it raises can be resolved on direct appeal and that HotChalk has not established that direct appeal is not an adequate remedy

in this instance. The Synod cites *State ex rel. Anderson v. Miller*, 320 Or 316, 324, 882 P2d 1109 (1994), and *State ex. rel. Automotive Emporium, Inc. v. Murchison*, 289 Or 265, 611 P2d 1169 (1980), for the proposition that, generally, relief from a discovery ruling must be pursued through an ordinary appeal and that "[d]irect appeal is an adequate remedy unless the relator would suffer a special loss beyond the burden of litigation by being forced to trial." *Murchison*, 289 Or at 269; *see also Fredrickson*, 363 Or at 813-14 (to same effect).

The Synod is correct that we have previously cautioned that the availability of mandamus to resolve a discovery dispute is limited: "[N]ot every pretrial discovery order is subject to mandamus," because "[m]any pretrial discovery errors do not have systemic implications and can be remedied on appeal." *Anderson*, 320 Or at 324; *Murchison*, 289 Or at 268 (stating that mandamus in the discovery context is generally inappropriate because "direct appeal is a plain, speedy and adequate remedy"). In *Murchison*, this court reasoned that "the prospect of suffering the burden of litigation" was insufficient in itself to justify mandamus. 289 Or at 269. The court concluded that appeal was a "plain, speedy and adequate" remedy so long as the relators did not "suffer[] an irretrievable loss of information and tactical advantage [that] could not be restored to them on direct appeal." *Id.*

That rule is not absolute, and, on occasion, we have issued writs of mandamus to resolve issues of pretrial discovery. For example, in *Anderson*, this court concluded that appeal was not a sufficient remedy where the trial court had denied the relator's request to record a deposition via videotape. 320 Or at 323. In that case, the trial court issued a "protective order requiring that the deposition be recorded stenographically only and that videotape not be used." *Id.* at 318. This court concluded that appeal would not remedy that error because the *method* used to record and present deposition testimony at trial could have a subtle yet significant impact at trial:

> "Use of tape recorders, video tape, and similar devices may facilitate less expensive procedures. They have a further advantage in that the finder of fact at trial often will gain

greater insight from the manner in which an answer is delivered and recorded by audio-visual devices. Moreover, a recording, video tape, or a motion picture of a deposition will avoid the tedium that is produced when counsel read lengthy depositions into evidence at trial."

*Id.* at 323 (quoting 8 Wright & Miller, *Federal Practice and Procedure* 426, § 2115 (1970) (footnotes omitted)).

As another example, in *Gwin v. Lynn*, 344 Or 65, 70-71, 176 P3d 1249 (2008), the relator had sought to depose a witness who, although designated as an expert, was also involved in the cases in a direct and personal way. When the relator sought to depose the witness because of her direct involvement in the actions giving rise to that case, the opposing party objected on the grounds that they planned to call her as an expert witness at trial, and the trial court sustained that objection. *Id.* at 69.[9] Before this court, the relator argued that he had a right to depose the witness on matters not covered by the bar on expert discovery. *Id.* at 70-71. We issued the writ, concluding that a witness may be both an expert and a fact witness and, therefore, may be deposed concerning only those facts pertinent to the witness's direct involvement in or observation of the relevant events. *Id.* at 67.

In this case, in its petition for a writ of mandamus, HotChalk claimed that mandamus was appropriate "because the trial court's order proscribes discovery into key aspects of HotChalk's complaint" and "direct appeal is not *** adequate [to] remedy" that purported error. At the petition stage, HotChalk asserted that, "without knowing the content of the communications improperly withheld as privileged, [it] will be prejudiced in prosecuting its validly pleaded tort and contract claims." However, in its briefing in this court, HotChalk does not reply to the Synod's argument in its brief on the merits or to the cases that it cites. HotChalk asserts only that relief on appeal would "come too late." But, HotChalk does not give us more.

_____

[9] As this court has previously stated, while ORCP 36 B authorizes discovery of any relevant nonprivileged matter, it does not authorize trial courts to order pretrial disclosure of the identity and intended testimony of expert witnesses. *Stevens v. Czerniak*, 336 Or 392, 84 P3d 140 (2004).

HotChalk has not addressed *Murchison* at all, let alone persuaded us that the general rule of *Murchison*—that "[a]ny claim of prejudice arising from a denial of discovery is reviewable on direct appeal"—is not applicable. 289 Or at 268. HotChalk has not persuaded us that whatever harm it may have suffered as a result of the trial court court's ruling equates to the type of irretrievable loss of information and loss of tactical advantage discussed in *Murchison*. In particular, we note that the trial court ordered the Synod to produce a detailed privilege log with entries for each of the withheld documents. Given that log, the nature of the dispute and parties' arguments, and the records in the proceeding below, HotChalk does not explain how direct appeal would be inadequate, and, on this record, we perceive no impediment to meaningful appellate review sufficient to make traditional appeal an inadequate remedy so as to justify the extraordinary relief of mandamus.

Accordingly, we now conclude, as we did in *Fredrickson*, that "the questions raised in the mandamus petition are better resolved in the ordinary trial and appellate process." 363 Or at 813. We therefore exercise our discretion to decline to resolve those questions on mandamus, and we dismiss the alternative writ as improvidently allowed.

The alternative writ of mandamus is dismissed as improvidently allowed.