Argued and submitted January 3, peremptory writ to issue January 31, 2008

Deanna GWIN,
*Plaintiff-Adverse Party,*

*and*

Thomas RENN,
*Plaintiff,*

*v.*

Elliott LYNN,
*Defendant-Relator.*

(CC 0512-13274; SC S055234)

176 P3d 1249

Jonathan M. Radmacher, of McEwen Gisvold, LLP, Portland, argued the cause and submitted the brief for Defendant-Relator. With him on the brief was John B. Benazzi, Portland.

Timothy W. Grabe, Portland, argued the cause and filed the brief for Plaintiff-Adverse Party.

GILLETTE, J.

### GILLETTE, J.

■        The issue in this original proceeding in mandamus is whether a person who is a prospective expert witness in a civil action can also be a "fact" witness[1] and, as such, can be deposed before trial pursuant to ORCP 36 B.[2] The trial court ruled, in essence, that a person could not be both a fact witness and an expert witness and, based on assurances by the objecting parties (plaintiffs) that the person in question would be testifying on their behalf as an expert witness at trial, denied the opposing party's (defendant's) motion to compel pretrial examination of the person. Defendant then petitioned this court for a writ of mandamus requiring the trial court to grant his motion or, in the alternative, to show cause why it had not done so. This court issued the writ; the court declined to change its ruling. The case therefore is before us for resolution. For the reasons that follow, we hold that a witness may be both an expert witness and a fact witness and, therefore, may be deposed concerning facts that pertain to the witness's direct involvement in or observation of the relevant events that are personally known to the witness and that were not gathered primarily for the purpose of rendering an expert opinion. A peremptory writ shall issue accordingly.

        The underlying case is an action for legal malpractice arising out of the following facts: In January 2003, plaintiff Deanna Gwin, who operated an adult home care business, hired defendant to defend her in a wage-claim action brought by a former employee, Waldron. The case ultimately went to trial and Waldron won a substantial judgment against Gwin, plus attorney fees and costs. Defendant thereafter represented Gwin in a bankruptcy proceeding, which defendant initiated by filing a Chapter 7 (dissolution) bankruptcy petition.

---

[1] For purposes of this opinion, a person is a "fact" witness if the person has obtained through one or more of the person's senses evidence relevant to a civil trial and pertaining to a material issue in that trial. To qualify as a "fact" witness, the person must not have obtained the evidence principally for the purpose of rendering an expert opinion in that trial.

[2] The text of ORCP 36 B is set out later in this opinion, 344 Or at 70.

Plaintiff Thomas Renn was appointed trustee in plaintiff Gwin's bankruptcy. At around the same time, Renn was serving as trustee in another bankruptcy case (the Bellows-Fairchild case) in which defendant had been involved. Renn became concerned about defendant's handling of both cases.[3] At Renn's insistence, the United States Trustee in Bankruptcy, Ilene Lashinsky, brought an "adversary complaint" against defendant in the Bankruptcy Court.[4] As a result of that complaint, a bankruptcy judge permanently enjoined defendant from practicing law in the Bankruptcy Court.

In spite of that injunction, defendant declined to find substitute counsel for Gwin and continued for a time as attorney of record in Gwin's bankruptcy case. Renn wrote to the Oregon State Bar's Professional Liability Fund (the PLF), suggesting that "repair counsel" be appointed to represent plaintiff Gwin's interests and to prevent additional harm. The PLF did not act on Renn's suggestion. Ultimately, the Bankruptcy Court issued an order terminating defendant's representation of Gwin.

Plaintiffs Gwin and Renn thereafter filed the present malpractice action against defendant, and hired Erin Evers, an Oregon CPA and lawyer, to do what was necessary to mitigate the damage that defendant's allegedly negligent representation had caused.[5]

In April 2007, plaintiffs moved for pretrial orders allowing them to present at trial certain evidence, including "mitigation-of-damage evidence that the PLF had worsened plaintiffs' damages by failing to appoint repair counsel." In

---

[3] Defendant allegedly had "borrowed" money belonging to his clients in the Bellows-Fairchild case from his client trust fund. Defendant's choice to file a Chapter 7 (dissolution) bankruptcy petition in Gwin's case, rather than a Chapter 13 (reorganization) petition also allegedly was erroneous. Defendant also allegedly was negligent in filing Gwin's bankruptcy petition *after* Waldron's judgment already had attached to Gwin's real estate, including the home in which she lived and carried on her business. Finally, defendant allegedly failed to accurately complete documents and had his clients sign them before they were complete.

[4] Renn was the trustee in the individual cases. Lashinsky was his superior, with authority over matters in several western states.

[5] At around that same time, the Oregon State Bar filed disciplinary charges against defendant, based on his conduct in Gwin's and other cases. In response, defendant resigned from the Bar.

support of that motion, plaintiffs submitted an affidavit from Evers that stated that she had represented plaintiffs in an attempt to remedy the financial problems caused by defendant, that she eventually was able to mitigate some of those damages, that Gwin would incur mitigation costs "in the sum of what is reasonably anticipated to be $35,000," and that, in her opinion, Gwin's damages "would have been reduced if [the PLF] had appointed repair counsel * * * in the spring of 2005."

In response to plaintiffs' pretrial motion, defendant sought to depose Evers about the testimony in her affidavit, including the activities that she had engaged in to assist Gwin and the reasonableness of her charges for those activities. Plaintiffs refused his request. Defendant then filed a motion to compel pretrial examination of Evers, citing ORCP 36 and "basic principles of due process and the right to confront witnesses." In arguing that motion to the trial court, defendant indicated that he was not seeking to discover the identity of an expert witness or the substance of an expert's testimony, but that he merely wanted "to cross-examine experts that plaintiff[s] voluntarily identified [with respect to] opinions and testimony that plaintiff[s] voluntarily solicited and submitted to this court." Plaintiffs objected to defendant's motion, arguing (among other things) that Evers would be testifying as an expert witness at the trial and that the rules governing depositions did not allow discovery either of the identity of expert witnesses or of the substance of their opinions.

Before a hearing was held on the motion to compel, defendant filed a motion for partial summary judgment arguing, among other things, that plaintiffs' claim for lost profits was too speculative and that there was no evidence in the record to support plaintiffs' claim for $35,000 for costs incurred in mitigation of damages. Plaintiffs responded to defendant's motion with a second affidavit by Evers. In that affidavit, Evers stated that, in her opinion, Gwin suffered a net loss of profits in the sum of $85,000 caused by defendant's negligence, and that her opinion was "[b]ased on numerous hours of legal and accounting services provided to [plaintiffs], careful review of [plaintiffs'] financial records, and my discussions with government personnel." Evers also stated that, in

her opinion, plaintiffs incurred mitigation expenses in the amount of $35,000 and that that amount was based on (1) attorney fees payed or owed to her, (2) a reasonable projection of attorney fees to be incurred in mitigating some of the damages caused by defendant, and (3) the cost of refinancing Gwin's residence, in order to clear the liens that had resulted from defendant's tardy bankruptcy filing and inappropriate decision to file under Chapter 7.

The trial court held a combined hearing on the motion to compel and the summary judgment motion. At that hearing, defendant sought to clarify his request, stating that he was not saying that he could inquire about Evers's opinions, but only that he could inquire "about the facts that she has personal knowledge of." The trial judge suggested that the distinction that defendant was drawing was not one recognized in law, and denied defendant's motion to compel. Defendant then initiated the present proceeding by petitioning this court for a writ of mandamus directing the trial court to vacate its denial of defendant's motion to compel. This court issued an alternative writ, and the trial court declined to change its ruling.

Both parties recognize that ORCP 36 B contains the controlling law. That rule provides, in part:

"Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

"(1) For all forms of discovery, parties may inquire regarding any matter, not privileged, which is relevant to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things, and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to discovery of admissible evidence."

Defendant contends that he is entitled to depose Evers under ORCP 36 B, because he is seeking discovery of a matter, "not privileged, which is relevant to the claim or

defense of [any party in the proceeding]." Defendant acknowledges that plaintiffs intend to use Evers as an expert witness and that, as this court held in *Stevens v. Czerniak*, 336 Or 392, 84 P3d 140 (2004), ORCP 36 B does not authorize trial courts to order pretrial disclosure of the identity and intended testimony of expert witnesses. Defendant also acknowledges that the trial court denied his request to depose Evers on the specific ground that plaintiffs intended to call Evers as an expert. Defendant argues, however, that *Stevens* does not apply to all of Evers's potential testimony, because she also is a "fact" witness, *i.e.*, she is involved in the case in a direct and personal way, and not merely as an expert.

In so arguing, defendant recognizes that OEC 702 defines an "expert" as a person who has "scientific, technical, or other specialized knowledge [and whose testimony] will assist the trier of fact to understand that evidence or to determine a fact in issue." Defendant also acknowledges that expert testimony is permitted where the issues are not within the expertise of the ordinary lay juror and that, in legal malpractice actions, expert testimony usually is permitted to establish the applicable standard of care. But, defendant argues, whether or not Evers will provide an expert opinion about the applicable standard of care and whether defendant's actions in representing Gwin met that standard, the fact remains that Evers was personally and directly involved with plaintiffs' mitigation efforts and, as such, has knowledge of factual matters at issue in the case, including

"the actual amounts [that] she has collected from plaintiff [Gwin], the percentage of work that she has done for plaintiff [Gwin] that she can fairly say was directed at mitigation of damages, whether or not plaintiff [Gwin's] house was ever refinanced, and which state employees she contacted on behalf of plaintiffs in order to get additional patients for plaintiff [Gwin's] home care business."

Defendant contends that those factual matters all are discoverable under ORCP 36 B, and that the trial court erred in concluding otherwise.

■■ On its face, ORCP 36 B(1) would appear to extend a right to depose or otherwise to obtain discovery from all potential witnesses (whose testimony is not privileged),[6] including expert witnesses. However, as this court has held, legislative context and history establish ineluctably that the scope of the rule was not intended to extend to expert witnesses. *Stevens*, 336 Or at 400-05. Still, nothing in the wording of the rule, the decision in *Stevens*, or in any other case of which we are aware, suggests that a witness who has been personally or directly involved in events relevant to a case may not be deposed as to facts of which the witness has personal knowledge, simply because that person will be, as to other matters, an expert witness at trial. Gwin, the adverse party in this mandamus proceeding, nonetheless contends that the rule should be read in that way. We turn to a consideration of each of her arguments to that effect.

Gwin first asserts that, however defendant is characterizing his discovery efforts *now*, his real goal is, and always has been, to cross-examine Evers about her opinions as an expert. Gwin notes, in that regard, that defendant's original motion in the trial court spoke of "cross-examin[ing] experts that plaintiff[s] voluntarily identified, [with respect to] opinions and testimony that plaintiff[s] voluntarily solicited and submitted to this court." However, the transcript reveals that, *before the trial court*, defendant clearly drew a distinction between Evers's anticipated role as an expert witness and her role as an actor in and a witness to other events that are relevant to plaintiffs' claims. Based on that record, we conclude that defendant seeks only to identify and to examine Evers concerning her personal involvement in those events and facts that are within her personal knowledge as a result of that involvement that are relevant or that may lead to evidence that is relevant to the underlying action.

---

[6] We emphasize that the issue before us in this case is limited to the question whether, due *solely* to the fact that Evers will testify as an expert in the legal malpractice proceeding against defendant, she *a fortiori* is immune from being deposed respecting *any* facts that she may be aware of respecting *any* material issue in the case. The present proceeding does not concern—and we express no opinion concerning—the possibility that some of Evers's testimony may be shielded by other doctrines, such as the work-product doctrine or the lawyer-client privilege.

Gwin also suggests that, by insisting on discovery of Evers's conduct in mitigating damages that defendant might have caused, defendant essentially is trying to shift fault away from himself "without bothering to name Evers as a third party defendant." We find no merit in that argument. Clearly, there is no basis for assuming that defendant would attempt to name Evers as a third-party defendant in an action that is concerned with damage allegedly caused by defendant's negligence. That does not mean, however, that the actions that Evers personally has taken on plaintiffs' behalf for the purposes of mitigating damages are not facts relevant to the case.

Gwin also argues more expansively that what defendant intends is "classic cross-examination of an expert"—conduct that is prohibited under this court's interpretation of ORCP 36 B in *Stevens*. In that regard, Gwin points out that one typically cross-examines an expert by taking apart the facts on which the expert bases her opinion and even "chang[ing] the facts that the expert interprets to see how that would change [the expert's] conclusion." But the "facts" that defendant wants from Evers pertain to her direct involvement in or her observation of and derivative knowledge of the relevant events, not to facts that either were or will be presented to her primarily for the purpose of forming and rendering an expert opinion.

Gwin also contends that, in any event, deposing Evers as a fact witness would inevitably stray into the prohibited area of expert opinion. Indeed, Gwin goes so far as to argue that "it boggles the mind to conjure a question that does not go to the substance of Ms. Evers [expert] testimony, as proscribed by *Stevens*." We are not "boggled," however. Indeed, it seems clear to us that one can distinguish questions that, for example, call for answers about Evers's actions as a factual participant in the effort to mitigate damages, including her legal work for Gwin, from those that call for answers about her expert opinions. And it also is true that, in any instances in which the lawyer defending the deposition believes that a question trespasses on Evers's expertise or otherwise is impermissible, the lawyer specifically is authorized by ORCP 39 D(3) to prevent the deponent from answering. That subsection provides, in part:

"All objections made at the time of the examination shall be noted on the record. A party or deponent shall state objections concisely and in a non-argumentative and non-suggestive manner. Evidence shall be taken subject to the objection, except that a party may instruct a deponent not to answer a question, and a deponent may decline to answer a question, only:

"* * * * *

"(c)   to preserve a privilege or constitutional or statutory right."

Moreover, it always is possible to obtain a trial court's ruling on any objection, should either party to the deposition consider it necessary to obtain one. ORCP 39 E(1).

Gwin also contends that the treatment of expert opinion in the Oregon Evidence Code supports the idea that Evers's testimony should not be discoverable. Gwin notes that the evidence rules pertaining to expert opinion testimony—specifically OEC 702, OEC 703, and OEC 705—contemplate that experts might be required to disclose the facts and data underpinning their opinions in *voir dire* (or, as is often said in the present day, in response to questions put to the supposed expert "in aid of objection")—but not through discovery. *See* OEC 705 Commentary (1981) ("Thus, the court may permit an adverse party to determine by voir dire whether the requirements of Rule 703 are satisfied before an expert offers an opinion."). But the fact that those rules may permit *voir dire* at trial does not mean that those rules, either by their terms or any reasonable extension of those terms, prohibit deposing the witness concerning facts that pertain to the witness's direct involvement in or observation of the relevant events that are personally known by the witness and that were not gathered primarily for the purpose of rendering an expert opinion.

We think, moreover, that Gwin's argument, like several of her other arguments, assumes both that defendant will not honor the limitation on his inquiry that he now acknowledges he must observe and that the lawyer defending the deposition will be unable to object and prevent any incursion into the expert witness's thought processes. We

have no reason to share Gwin's concerns as to the first matter, and we have no basis for thinking that plaintiffs' very capable and experienced lawyer will be unable to defend the deposition adequately.

Finally, Gwin argues that most of the information that defendant seeks to discover is protected under the attorney-client or work-product doctrine and, as such, is exempt from discovery. As we already have indicated, 344 Or at 72 n 6, issues respecting those theories are beyond the scope of this mandamus proceeding. Moreover, we are unpersuaded that the safeguards available to a party defending a deposition under ORCP 39 D(3) and ORCP 39 E(1) are inadequate and, even if they could be inadequate in a given case (not this one), we do not understand how any such theoretical difficulty could trump the clarity of the scope of discovery permitted under ORCP 36 B(1).

Based on the foregoing analysis and the wording of the pertinent discovery rule, we hold that the trial court erred in denying defendant any right to depose Evers. A peremptory writ shall issue directing the trial judge to withdraw his order denying defendant the right to depose witness Evers. Any such deposition must, of course, be limited to evidence that Evers can provide as a fact witness, and must observe the prohibition against pretrial deposition of expert witnesses with respect to their anticipated expert testimony.

Peremptory writ to issue.