NAKAMOTO, J., dissenting.
This mandamus proceeding concerns the application of Oregon's widely recognized bar on expert discovery to doctors who were actors in events relevant to plaintiff's medical malpractice action. Plaintiff's position is that the bar on expert discovery applies solely to a party's retained experts. Unsurprisingly, this court revisits a decision it issued a decade ago in Gwin v. Lynn , 344 Or. 65, 176 P.3d 1249 (2008), which also involved the deposition of an expert who was an actor in events relevant to that civil action. Despite **578 Gwin , a majority of the court now concludes that the doctors have the status of "ordinary" witnesses, which it equates with witnesses, expert or not, "who acquired or developed facts or opinions as actors in the events at issue." Ransom v. Radiology Specialists , 363 Or. 552, 565, 425 P.3d 412 (2018). The majority further concludes that, as ordinary witnesses, the doctors must answer all questions at their depositions within the scope of ORCP 36 B(1), even if those questions would require them to form and convey new expert opinions. Id. at 566-67, 425 P.3d at 420-21. Because the majority's rationale fails to account for Oregon practice and the legislative history of ORCP 36 B, misapplies Gwin and Stevens v. Czerniak , 336 Or. 392, 84 P.3d 140 (2004), and alters settled notions of what Oregon law permits with respect to the discovery of experts, I respectfully dissent.
I. BACKGROUND
The relevant facts are procedural. In 2013, Dr. Levine read plaintiff's computerized tomography (CT) scans and Dr. Bageac read plaintiff's nuclear medicine bone study and x-rays. Plaintiff alleged that each of them had misread the diagnostic images, resulting in the erroneous staging of her breast cancer at Stage II, often effectively treated, rather than at Stage IV, when the cancer has spread to other areas of the body. Plaintiff alleged that their conduct fell below the standard *427 of care, which led to unnecessary medical procedures and other treatment.
At plaintiff's depositions of the two doctors, defense counsel drew a distinction between questions posed by plaintiff that sought to elicit information about historical facts and opinions and the doctors' general knowledge, on the one hand, and those that sought new opinions that the doctors would form by interpreting the images as part of the depositions, on the other. The disputed questioning at the depositions involved plaintiff's questions seeking the doctors' current opinions about the radiological images.
During the deposition of Divine, for example, the record reflects that plaintiff asked and the doctor answered questions about the report he had prepared in 2013 concerning the CT scan, explaining terms he had used in his report. Plaintiff asked, and the doctor answered, questions **579 regarding the circumstances in 2013, such as whether a specific image was available then, and what information the doctor had received about plaintiff before reading the CT scan. The doctor also answered questions eliciting information about his general knowledge as a radiologist. For example, plaintiff asked whether the doctor had learned anything new since the lawsuit was filed that would cause him to believe that he would read the CT scan differently than in 2013, and the doctor answered that he had not specifically learned anything new or different. The doctor was asked and explained why contrast dye would be used in the CT scan and answered other questions regarding his general knowledge, such as the significance of finding "a black dot in the middle of the bony structure" in a CT scan. Defense counsel, however, consistently objected and instructed the witness not to answer when plaintiff presented the doctor with exhibits consisting of plaintiff's CT scans that he had read in 2013 and sought to have him read and interpret them anew at the deposition.
Bageac's deposition followed the same pattern. For example, plaintiff's counsel asked, and the witness answered, a number of questions concerning his general approach to looking at a nuclear bone scan and the use of tracer in a nuclear bone study; whether he had known that plaintiff had cancer when he read her radiological images; what parts of his 2013 report indicated; why he had recommended x-rays of plaintiff's humerus; and whether a benign lesion could show up on an x-ray. But defense counsel asserted objections and instructed Bageac not to answer when plaintiff asked him to interpret plaintiff's 2013 radiological images at his deposition. As an example, when plaintiff's counsel asked him "what these two white dots are" on a copy of one of the images he had read in 2013, defense counsel responded, "Object and instruct not answer, unless you have an independent memory as you sit here today of interpreting this bone scan."
After the doctors' depositions, plaintiff filed a motion to compel responses regarding the doctors' current reading of the radiological images. In support of her motion, plaintiff noted that "Oregon's prohibition on trial expert discovery is a minority rule amongst Oregon's sister states" and argued **580 that the questions that she had posed to the doctors were relevant to issues in the case and that federal rules of civil procedure concerning expert discovery are "concerned only with nonparty experts." She contended in her motion that "[t]here is no privilege or authority which allows defendant to refuse to answer [plaintiff's] questions."
Defendant opposed the motion. Defendant established, through declarations from the doctors, that they had no present recollection of interpreting the relevant radiological images they had variously read in 2013. The doctors averred that answers to the questions plaintiff had posed "would necessarily be based on a fresh examination of the images and, as such, upon newly formed or created opinions," and that answers would "necessarily be informed, and affected by," a number of factors, including "[i]nformation obtained from my attorneys in defense of the case" and "knowledge that *** plaintiff's breast cancer was initially staged as Stage II and later staged to Stage IV."
Among three primary arguments, defendant asserted Oregon's bar on expert discovery. Defendant noted that, although the doctors were involved in the alleged medical malpractice, they may hold expert opinions *428 and offer expert testimony. See Tiedemann v. Radiation Therapy Consultants , 299 Or. 238, 242-44, 701 P.2d 440 (1985) (explaining that the affiant, although a physician and a defendant in the malpractice action, established the requisite qualifications to testify as an expert under OEC 702 and provided "expert testimony on the key issues in the case" that went unrebutted). And citing both Stevens and Gwin , defendant argued that plaintiff sought impermissible expert discovery through her questions. After a hearing, the trial court denied the motion as to the answers sought from both doctors.
In this court, the parties take positions like those that they took in the trial court. Plaintiff again contends that defendant had no basis to prohibit her from exploring the doctors' expertise at their depositions and that a "treating physician whose conduct is at issue is not an expert witness contemplated within the prohibitions of ORCP 36." Thus, as it was in the trial court, the heart of the discovery dispute is the extent to which the expert-discovery bar **581 applies during depositions of experts who were involved in events relevant to the civil action.
II. DISCUSSION
A. An Overview of ORCP 36 B
The rule that contains general provisions governing discovery is ORCP 36. Section B of the rule, with three subsections, governs the scope of discovery. Subsection (1) provides the general scope of discovery in civil actions; subsection (2) addresses discovery concerning insurance agreements or policies; and subsection (3) covers trial preparation materials. Plaintiff asserts that ORCP 36 B(1) controls in this case. It provides:
"For all forms of discovery, parties may inquire regarding any matter, not privileged, that is relevant to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things, and the identity and location of persons having knowledge of any discoverable matter. It is not a ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."
In brief, the legislature deleted a proposed fourth subsection of ORCP 36 B when the Oregon Rules of Civil Procedure were first promulgated.[1] In 1977, the legislature established the Council on Court Procedures. Or. Laws 1977, ch. 890, § 1. As provided in ORS 1.735(1), the Council was charged with promulgating "rules governing pleading, practice and procedure *** in all civil proceedings in all courts of the state which shall not abridge, enlarge or modify the substantive rights of any litigant." In 1978, the Council promulgated what it described as "unique Oregon Rules of Civil Procedure." 5Legislative History Relating to Promulgation of Oregon Rules of Civil Procedure 2 (1979). The Council explained that it had "sought to promulgate the best rules which could be developed for practice in Oregon courts."Id.
**582 The Council "heavily relied" on existing rules, but when they were inadequate, the Council looked to the Federal Rules of Civil Procedure, procedural rules in other states, or developed "entirely new rules." Id. As originally promulgated by the Council on Court Procedures in 1978, ORCP 36 B(4) would have permitted limited discovery of expert witnesses to be called at trial. But in 1979, the legislature rejected ORCP 36 B(4), enacting a statute that omitted its specific provision for expert discovery. Stevens , 336 Or. at 401-02, 84 P.3d 140.
Preservation of Oregon practice was an important aspect of the 1979 Legislative Assembly's decision to reject limited expert discovery, and the legislature's rejection of ORCP 36 B(4) cemented the bar on expert discovery. In May 1980, as the Council on Court Procedures was reviewing possible amendments to the Oregon Rules of Civil Procedure that had gone into effect, the *429 Council recognized that ORCP 36 B did not cover expert discovery:
"The Council discussed the question of use of Rule 36 B. to authorize interrogatories relating to expert witnesses. It was pointed out that: (a) Rule 36 B. does not create interrogatories or any other discovery device but merely defines scope of discovery for these devices authorized elsewhere in the rules and that there is no rule authorizing interrogatories in the ORCP; and, (b) the matter of discovery of experts is not covered by ORCP 36 ."
Minutes, Council on Court Procedures, May 10, 1980, 3-4 in Oregon Council of Court Procedures, 3 Oregon Rules of Civil Procedure and Amendments: 1979-81 Biennium (emphasis added). For those reasons, Oregon's longstanding practice barring expert discovery ought to inform this court's decision.
B. Oregon's No-Expert-Discovery Practice
Since ORCP 36 B was enacted, interested parties have debated whether that rule and its scope of discovery in ORCP 36 B(1) should be interpreted as broadly as its federal counterpart. But even the proponents of such an interpretation have acknowledged that the general practice in Oregon has been to the contrary-that is, the bench and bar have operated on the assumption that discovery of experts was **583 disapproved in total when ORCP 36 B was enacted. See, e.g. , J. D. Droddy, The Case for Discovery of Expert Witnesses Under Existing Oregon Law , 27 Willamette L.J. 1, 1 (1991) (noting that, at the time, there was "a common belief among most lawyers and judges in this state that pretrial discovery of the identity, knowledge, and opinions of expert witnesses is not permitted under Oregon law"); Michael B. Wise and Douglas C. Alexander II, Discovery of Experts: A Call for Change in Oregon , 20 Willamette LJ 223, 251 (1984) (stating that under present Oregon practice, attorneys would argue that the legislature considered, but rejected, proposals to allow expert discovery and, thus, no discovery of experts is permitted). See also David B. Markowitz and Lynn R. Nakamoto, Does Oregon Prohibit Depositions of Experts , 14 Litig. J. 6 (OSB Litigation Section March 1996) (noting the prevailing understanding that depositions of experts are prohibited in total) (cited in Oregon State Bar, I Civil Litigation Manual § 16.33 (Supp. 1999) ).
The longstanding practice and general understanding that expert discovery is not permitted in Oregon is confirmed by a later effort in the 1980s to introduce expert discovery through a change to ORCP 36. In the latter half of the 1980s, the Oregon State Bar Procedure and Practice Committee studied whether to change Oregon's discovery rules in two areas, one of which was discovery of experts. John Paul Graff, The Debate Over the Discovery of Experts and the Use of Written Interrogatories , 50 No. 3 Oregon State Bar Bulletin 5 (1989). Graff, the past chairman of that committee, recounted that subcommittees were formed, and, although the subcommittee regarding expert discovery recommended that "Oregon's rules of civil procedure should be changed to provide for limited expert discovery except in medical, dental and podiatric malpractice cases," the full committee rejected the proposed rule changes on the ground that there was no need "at all" for expert discovery. Id . The vote had been close, and Graff was writing to introduce the proposed expert discovery and interrogatory rules to members of the Bar at large to seek their views, to help the committee "in deciding whether or not to recommend the proposed rules, or ones similar to them, to the Council on Court Procedures." Id .
**584 The Bar subcommittee's 1989 proposed rule regarding expert discovery, again designated as ORCP 36 B(4), provided:
"(a) Upon written request of any party, any other party shall deliver a written statement signed by the other party or the other party's attorney stating the subject matter on which each expert whom the other party reasonably expects to call as a witness at trial is expected to testify, the substance of the facts and opinion to which is expected to testify, and a summary of the grounds for each opinion.
"(b) No other or further discovery of experts, including the names and addresses of experts, shall be permitted except *430 upon stipulation between or among disclosing parties, or except as may otherwise be expressly provided in these rules.
"(c) The party upon whom a request has been served under subsection B.(4)(a) hereof shall deliver the statement within 30 days after service of the request; provided, however, that no statement is required to be delivered before the expiration of 120 days from the date of filing of the complaint or other initial pleading in the case. Upon motion for good cause shown, the court may lengthen or shorten any of the time requirements specified in this subsection ***.
"(d) A party is under a duty seasonably to:
"(i) Supplement a statement [under certain circumstances];
"(ii) Amend a prior statement [under certain circumstances].
"(e) When a party for good cause shown retains an expert an insufficient period of time before the commencement of trial to provide a statement within the time required in subsection B.(4)(c) of this rule, the party shall not be precluded from introducing evidence through the expert solely on grounds of non-compliance with subsection B.(4)(c). In such case, upon motion or on its own initiative, the court may make whatever order may be just, at or prior to trial.
"(f) Any party who has requested a statement under this rule may move to determine the sufficiency of the statement ***."
Graff, 50 No. 3 Oregon State Bar Bulletin at 6-7.
**585 Along with publication of the proposed rule, two prominent members of the bar submitted articles. Although they took opposite positions on the rule, both noted the no-expert-discovery practice in Oregon.
David Brewer-then practicing with a Eugene law firm and later a member of this court-wrote in favor of changing discovery practice. David Brewer, An Overdue Change , 50 No. 3 Oregon State Bar Bulletin 6 (1989). He wrote that "only Oregon practice does not permit routine expert discovery" and that a change would at least "eliminate one reason for forum shopping between Oregon's state and federal courts."Id . He also proposed that the committee's draft rule be modified "to absolutely exempt medical, dental and podiatric negligence cases from its reach" to obviate the plaintiff's medical malpractice bar's strong opposition to "routine expert discovery." Id . at 8.
Charles Burt, then a plaintiff's trial attorney with a firm in Salem, wrote to oppose the proposed change to expert discovery. Charles Burt, An Unnecessary Burden , 50 No. 3 Oregon State Bar Bulletin 7 (1989). He argued that "the change in discovery to provide for the routine disclosure of all expert witnesses" was unnecessary. He argued that, in an ordinary auto case, as an example, "every doctor who has ever treated the plaintiff is known to the defense counsel by depositions and by way of demand for medical records," and so "there can hardly be a surprise as to who the expert is" or, given the prevalence of reports, "what the expert will say." Id . He also argued that the rule change would increase costs and time spent on discovery, dampen the availability of expert witnesses, who would have to deal with discovery disclosures, and favor clients with access to resources. Id . at 9.
The expert discovery rule that was proposed in 1989 applied on its face to all testifying experts, including, as Burt observed, treating physicians. Like the disclosure provision promulgated by the Council on Court Procedures that the legislature had rejected a decade earlier, the proposed 1989 rule allowing discovery of the substance of an expert's expected testimony was never enacted, leaving the no-expert-discovery practice in Oregon intact.
**586 C. Stevens v. Czerniak
Fifteen years later, in Stevens , this court confirmed what Oregon lawyers had long understood was the state of the law regarding expert discovery. In that mandamus proceeding, this court considered whether the trial court had impermissibly ordered the petitioner, who in the underlying case was seeking post-conviction relief, to provide pretrial disclosure of his expert witnesses'
*431 names and anticipated testimony. 336 Or. at 394, 84 P.3d 140.
The court in Stevens described, in general terms, ORCP 36 B(4) as the Council had promulgated it: The rule "required the parties, upon request, to disclose their experts' names and addresses and the subject matter upon which the parties expected their experts to testify." 336 Or. at 403-04, 84 P.3d 140. The court described the highlights of testimony from two of the witnesses who testified before the Joint House-Senate Committee on the Judiciary, an attorney member of the Council who was in favor of subsection B(4) and another attorney who was opposed. Id. at 404, 84 P.3d 140. The court noted that, after "both sides explored that debate over several hearings, a majority of the joint committee found the opponents' arguments persuasive." Id.
The majority's opinion rests in large part on its view that " Stevens can be understood as recognizing a legislative intent to bar parties from discovering the identities of expert witnesses who fall into the three classes of expert witnesses addressed in the federal rule and the Merrill memorandum-expert witnesses who acquired or developed facts or opinions in anticipation of litigation or for trial-and the substance of their opinions." Ransom , 363 Or. at 565-68, 425 P.3d at 419-21. Yet that understanding of what the 1979 Legislative Assembly intended is unsupported by the Stevens opinion itself and is incorrect considering the legislative history of ORCP 36 B.
The court in Stevens never concluded that the legislature had recognized a bar on discovery of only one class of expert witness, that is, retained experts or, similar to retained experts, in-house employee experts, as described in the federal discovery rule. Rather, the Stevens court recognized that Oregon practice barring expert discovery-not disapproval of expert discovery as framed in FRCP 26(b)(4), **587 as the majority assumes, see Ransom , 363 Or. at 565-68, 425 P.3d at 419-21-was the defining factor in the legislature's decision to take out ORCP 36 B(4) as promulgated by the Council on Court Procedures.[2] It bears emphasizing that this court's key conclusions in Stevens were that (1) "the legislature neither understood nor intended that ORCP 36 B(1) would authorize discovery of nonprivileged expert testimony "-contrary to plaintiff's argument in this court and the majority's holding-and (2) the form of ORCP 36 B that was adopted reflected a legislative "policy choice to continue the practice of not authorizing expert discovery in civil actions in state courts." Stevens , 336 Or. at 404, 84 P.3d 140 (emphasis added).
Indeed, the history of the Council's work on ORCP 36 B(4) illustrates how far the Council's rule was from FRCP 26(a)(4) when it was submitted to the legislature. A September 1978 tentative draft of ORCP 36 B(4) provided, in subsection (a):
"Subject to the provisions of Rule 44, upon request of any party, any other party shall deliver a written statement signed by the other party or the other party's attorney, giving the name of any person the other party reasonably expects to call as an expert witness at trial, and stating the areas in which it is claimed the witness is qualified to testify as an expert, the facts by reason of which it is claimed the witness is an expert, and the subject matter upon which the expert is expected to testify. The statement shall be accompanied by a written report prepared by the expert which shall set forth the substance of the facts and opinions to which the expert will testify and a summary of the grounds for each opinion. If such expert witness relies in forming an opinion, in whole or in part, upon facts, data or opinions contained in a *432 document or made known to such **588 expert witness by or through another person, the party may also discover with respect thereto as provided in this subsection. The report and statement shall be delivered within a reasonable time after the request is made and not less than 30 days prior to the commencement of trial unless the identity of a person to be called as an expert witness at the trial is not determined until less than 30 days prior to trial, or unless the request is made less than 30 days prior to trial."
5 Legislative History Relating to Promulgation, Proposed Oregon Rules of Civil Procedure, Tentative Draft (Sept. 15, 1978) 84-85. The "Background Note" to that subsection explained that ORCP 36 B(4) "is a new provision drafted by the Council" and "deals only with experts to be called at trial and leaves regulation of discovery from experts employed, retained or consulted by an opponent but not to be called at trial to existing rules relating to privilege and fairness as developed by statute or cases." Id. at 88.
That tentative draft was based on the rule that Professor Merrill had recommended to the Council on Court Procedures in his memorandum titled "Discovery of Experts: Rule 26(b)(4) and the Bodyfelt Proposal" in 2 Legislative History Relating to Promulgation of Oregon Rules of Civil Procedure ("Merrill Memorandum"). Merrill explained that his recommended rule was based on the "Bodyfelt rule, with some modifications," and described it as the "better approach to regulation of discovery of experts." Merrill Memorandum at 22. The heart of the Bodyfelt proposal was to have testifying experts provide written statements, and then, if necessary, the experts could be deposed. Merrill also opined that what he called the "Graham proposal" from Professor Michael H. Graham of the University of Illinois Law School was an improvement over FRCP 26(b)(4) ; the Graham proposal included authorization for discovery from testifying expert witnesses, not limited to any specific discovery device. Id. at 19-20, 22. In Merrill's view, Graham's work indicated that the expert discovery rule should "avoid limiting the scope of discovery where there is a high and demonstrated need." Id. at 22. Merrill explained that "[t]here is such a high need for discovery of experts to be called at trial," as opposed to "non-trial expert witnesses." Id. He also **589 explained that the draft rule he recommended was in part based on Graham's proposal. Id. at 23.
But the September 1978 tentative draft was not promulgated by the Council. As Merrill later explained in a summary of Rules 36 to 46 that he presented to the legislature in March 1979, once the Council received public comment on the draft of ORCP 36 B(4),
"the Council determined that this rule might create, rather than solve, problems and promulgated only a rule requiring a party to identify proposed expert witnesses. Any actual discovery from those witnesses would remain as it was before under existing case law defining the scope of discovery."
Exhibit A, Joint House-Senate Committee on the Judiciary, HB 3131, Mar. 8, 1979 (Summary of Rules 36 - 46 ).
Instead, in December 1978, the Council adopted a narrow version of ORCP 36 B(4). As promulgated, ORCP 36 B(4)(a) read:
"Upon request of any party, any other party shall deliver a written statement signed by the other party or the other party's attorney giving the name and address of any person the other party reasonably expects to call as an expert witness at trial and the subject matter upon which the expert is expected to testify. The statement shall be delivered within a reasonable time after the request is made and not less than 30 days prior to the commencement of trial unless the identity of a person to be called as an expert witness at the trial is not determined until less than 30 days prior to trial, or unless the request is made less than 30 days prior to trial."
Council on Court Procedures, Amendments to ORCP 26 Promulgated by Council of Court Procedures 1980 to 2016: 1978 Original Promulgation, ORCP 36, http://counciloncourtprocedures.org/Content/Legislative_History_of_Rules/ORCP_36_promulgations_all_years.pdf (accessed Aug. 8, 2018). It is apparent that the legislature was not presented with a rule that looked like *433 FRCP 26(b)(4), which then permitted a party to "require one who intends to use the expert to state the substance of the testimony that the expert is expected to give," but a "court may order further discovery." Federal Rules of Civil Procedure, Rule 26, Notes of Advisory **590 Committee on Rules-1970 Amendment, https://www.law.cornell.edu/rules/frcp/rule_26 (accessed Aug. 8, 2018).
But even as spare as it was, ORCP 36 B(4)'s identification requirement sparked controversy-and, as the Stevens decision indicates, much testimony and discussion before the Joint House-Senate Committee on the Judiciary. The committee heard repeatedly that discovery of testifying experts was not the practice in Oregon. A Portland lawyer explained that ORCP 36 B(4) as promulgated was a "departure from present law, in that there is no duty to disclose the names of expert witnesses." Exhibit B, Joint House-Senate Committee on the Judiciary, HB 3131, Mar. 8, 1979, (Comments Concerning the Proposed Oregon Rules of Civil Procedure by Donald N. Atchison).
Linn County Circuit Court Judge Wendell H. Tompkins, a member of the Council on Court Procedures, also testified before the committee. He explained that under Oregon procedure, "the litigants are not entitled to depose the opposing expert with respect to his expert opinion. The proposed rule does not change that at all." Tape Recording, Joint House-Senate Committee on the Judiciary, HB 3131, Mar. 8, 1979, Tape 2, Side A (statement of Judge Wendell H. Tomkins). In response to a question by Senator Vernon Cook regarding potential "gamesmanship" as a result of the disclosure of experts, Judge Tompkins said that he did not see the question that Senator Cook had posed as "being a substantial problem in state circuit courts because as a general proposition, you can't depose an expert anyway." Id. When Senator Cook later stated that he would think that, logically, if there were discovery, then a party should be able to "pull in the other side's expert witnesses and find out what they are going to say," Judge Tompkins responded that, although that was the predominant practice in the country, "it hasn't been the rule in Oregon for a long time." He added, "It hasn't worked too badly." Id. (statements of Sen. Vernon Cook and Judge Wendell H. Tompkins).
In sum, the major premise of the majority opinion-that the legislature intended to strike down what was essentially a federal rule that permitted discovery only of retained expert witnesses and to bar discovery of their **591 expert opinions, and not those of participating experts-is not supported by Stevens or the legislative history of ORCP 36 B(4). Instead, the Council put forward a narrow disclosure rule that was directed at all testifying experts, and the legislature rejected it. The fact that the legislature that reviewed ORCP 36 B was aware that Oregon courts generally did not permit discovery of expert witnesses and made a considered decision to uphold that practice by removing ORCP 36 B(4) as promulgated by the Council, in addition to this court's recognition of Oregon's no-expert-discovery practice in Stevens , should be matters of consequence in our consideration of the present question.
D. Gwin v. Lynn
Arguably, Stevens did not determine whether an expert who also participated in some of the events at issue in the case could be questioned in a discovery deposition about the substance of his or her expert opinions. In Gwin , four years after deciding Stevens , this court clarified that a witness who is an expert as to some matters and a fact witness as to other matters may be deposed as to the historical facts of his or her direct involvement in or observation of relevant events. Gwin , 344 Or. at 67, 176 P.3d 1249. However, the basic bar on expert discovery in Oregon-that a witness's opinions as an expert are not subject to discovery-was not modified in Gwin and remains untouched, as members of the bar have correctly understood to be the case. See, e.g. , II Oregon Civil Pleading and Practice § 27.5-7 (2012) (observing that Stevens "resolved any ambiguity in Oregon about the disclosure of an expert's identity or opinions").
Gwin , a legal malpractice action, involved an expert who was both an Oregon certified public accountant and a lawyer. The plaintiff had hired the expert to mitigate damages *434 from the defendant's alleged legal malpractice, 344 Or. at 68, 176 P.3d 1249, and then sought to present the expert's testimony at trial, including her opinion that the plaintiff would have to incur further expenses to mitigate her damages and that the Oregon State Bar's Professional Liability Fund could have reduced the damages by appointing "repair counsel" to help the plaintiff at an earlier point. Id. at 69, 176 P.3d 1249. **592 The defendant sought to depose the expert about her personal involvement in efforts to mitigate the damage that the defendant's alleged malpractice had caused. Id. at 68-69, 176 P.3d 1249. At a hearing on the defendant's motion to compel the lawyer's participation, the defendant clarified that he did not wish to inquire into the lawyer's expert opinions but only into the "facts" of which she had "personal knowledge" because of her involvement in mitigating the plaintiffs' damages. Id . at 70, 176 P.3d 1249. After the trial court denied the motion to compel, the defendant sought a writ of mandamus directing the trial court to vacate its order, arguing that, even if the lawyer would provide an expert opinion about, for example, the applicable standard of care, her knowledge of "factual matters at issue in the case" ought to be discoverable. Id . at 71, 176 P.3d 1249.
This court agreed with the defendant and issued a peremptory writ. This court first noted that, as the court had held in Stevens , the right under ORCP 36 B(1) to obtain discovery from all potential witnesses does not extend to expert witnesses. Id. at 72, 176 P.3d 1249 ("[L]egislative context and history establish ineluctably that the scope of the rule was not intended to extend to expert witnesses.").
The Gwin court then stated:
"Still, nothing in the wording of [ ORCP 36 B], the decision in Stevens , or in any other case of which we are aware, suggests that a witness who has been personally or directly involved in events relevant to a case may not be deposed as to facts of which the witness has personal knowledge, simply because that person will be, as to other matters, an expert witness at trial."
Id . at 72, 176 P.3d 1249. As that passage suggests, the extent of the discovery allowed in Gwin turned on the distinction between historical facts, which the expert knew due to her participation in relevant events, and the opinions that she might express at trial based on her expertise.
Emphasizing that distinction, the court thereafter considered and rejected various arguments that the plaintiffs had raised in opposition to the notion that their expert might be deposed as to her personal involvement in the underlying events. To an argument that the defendant's real **593 intent was to cross-examine the lawyer about her opinions as an expert, the court responded that it was persuaded that the defendant only sought to examine the lawyer "concerning her personal involvement in those events and facts that are within her personal knowledge as a result of that involvement." Id .
As for the plaintiff's contention that the evidence rules relating to expert opinions suggested that experts might have to disclose facts underpinning their opinions in voir dire but not in discovery, this court responded that the cited rules could not be read to "prohibit deposing the witness concerning events that pertain to the witness's direct involvement in or observation of the relevant facts that are personally known by the witness and that were not gathered primarily for the purpose of rendering an expert opinion." Id. at 74, 176 P.3d 1249.
And on a point directly relevant to this case, the court in Gwin rejected the plaintiffs' argument that the defendant would attempt to test the expert lawyer's expertise by "taking apart the facts on which the expert bases her opinion." The court explained that "the 'facts' that [the] defendant want[ed] from [the expert] pertain[ed] to her direct involvement in or her observation of and derivative knowledge of the relevant events." Id . at 73, 176 P.3d 1249. In the end, the court issued a peremptory writ directing the trial court to allow the defendant to depose the lawyer, but it specified that "[a]ny such deposition must *** be limited to evidence that [the lawyer] can provide as a fact witness, and must observe the prohibition against pretrial deposition of expert witnesses with *435 respect to their anticipated expert testimony." Id . at 75, 176 P.3d 1249.
Ultimately, the court in Gwin held that the general prohibition on expert discovery recognized in Stevens stands, but that a party may depose an expert as to (and only as to) factual matters within the expert's personal knowledge. To the extent that that is not evident from the opinion's use of the term "fact witness," it is made clear by the court's descriptions of the material sought by the defendants as, not "opinions," but "the facts that [the witness] has personal knowledge of," Gwin, 344 Or. at 70, 176 P.3d 1249 ; "factual **594 matters at issue," id. at 71, 176 P.3d 1249 ; "facts of which the witness has personal knowledge," id. at 72, 176 P.3d 1249 ; "facts *** pertain[ing] to her direct involvement in or her observation of and derivative knowledge of the relevant events," id. at 73, 176 P.3d 1249 ; and "facts that pertain to the witness's direct involvement in or observation of the relevant events," id . at 74, 176 P.3d 1249.
The point is also made by the facts in Gwin . There, the evidence that the defendant sought from the plaintiff's expert, and to which the court concluded that the defendant was entitled, was factual-rather than opinion-evidence. It is described in the opinion as "the actual amounts [that the witness] has collected from [the plaintiff], the percentage of work that she has done for [the plaintiff] that she can fairly say was directed at mitigation of damages, whether or not [the plaintiff's] house was ever refinanced, and which state employees she contacted on behalf of [the plaintiff] in order to get additional patients for [the plaintiff's] home care business." Id. at 71, 176 P.3d 1249.
Moreover, this court drew a distinction between fact questions and opinion questions. In responding to the plaintiff's argument that, by deposing her expert concerning the historical facts concerning her work to mitigate damages, the defendant "would inevitably stray into the prohibited area of expert opinion," this court explained that it was possible to distinguish between questions about facts and questions that sought expert opinions:
"Indeed, it seems clear to us that one can distinguish questions that, for example, call for answers about [the witness's] actions as a factual participant in the effort to mitigate damages, including her legal work for [the plaintiff], from those that call for answers about her expert opinions . And it also is true that, in any instance in which the lawyer defending the deposition believes that a question trespasses on [the witness's] expertise or otherwise is impermissible, the lawyer specifically is authorized by ORCP 39 D(3) to prevent the deponent from answering."
Gwin , 344 Or. at 73, 176 P.3d 1249 (emphasis added). As permitted and encouraged in Gwin , defendant's lawyer in this case drew the line between questions calling for historical facts (including expert opinions that the doctors had formed in 2013) and **595 questions directed at obtaining newly formed expert opinions from the doctors during their depositions.
Thus, I disagree with the majority's conclusion that "it is not the current application of expertise that is dispositive." Ransom , 363 Or. at 566, 425 P.3d at 420. In reaching that conclusion, the majority relies on Gwin for the propositions that (1) "an expert who acquires or develops facts or opinions as a participant in the events at issue may be questioned about those events as an ordinary witness"; (2) "under ORCP 36 B, a participating expert can be asked any questions relevant to his or her direct involvement in the events at issue"; and (3) whether "a participating expert also has expert qualifications does not alter or restrict the scope of the questions that he or she may be asked about his or her participation." Ransom , 363 Or. at 566-67, 425 P.3d at 420 (emphasis in original). The majority's reading of Gwin , however, is in some respects wrong and in other respects merely imprecise in a way that obfuscates the opinion's actual point.
First, Gwin does not support the distinction the majority draws between "participating" and "nonparticipating" expert witnesses, based on the sources of their evidence. Although the Gwin opinion does contain a statement to the effect that, for purposes of *436 the opinion, a "fact" witness is a person who has "obtained" relevant facts through their own senses, 344 Or. at 67 n. 1, 176 P.3d 1249 (as opposed to obtaining facts "principally for the purpose of rendering an expert opinion in the trial," id . at 75, 176 P.3d 1249 ), that description refers to historical facts, and this court would permit the opponent to ask the witness deposition questions only about those historical facts. Neither does Gwin focus, as the majority appears to suggest, on whether the "facts" being sought were directly perceived by the witness or else presented to him or her for the purposes of rendering an opinion. Instead, discoverability turns not on the source of the facts underpinning the evidence sought from the expert, but on the content of the testimony that is sought, i.e. , whether it would impart the witness's current scientific, technical, or otherwise specialized knowledge or opinion to assist the trier of fact or whether the witness would relate historical facts given "the witness's direct involvement in or observation of the relevant events **596 that are personally known by the witness." Id. at 74, 176 P.3d 1249. But the most significant problem with the majority's explanation of Gwin is that it obscures what should be an obvious point of the opinion-that a party may only depose an expert as to factual matters within the expert's personal knowledge.
To the extent that the doctors were involved in events that are relevant to plaintiff's case, plaintiff is entitled to question them about matters within their personal knowledge concerning how or why they proceeded in the manner that they did-including their own observations, findings, diagnoses, and opinions at the time. Those matters are historical "facts" in this context, and they are proper subjects for deposition under Gwin . In this case, plaintiff did inquire, and the doctors answered questions regarding, those matters.
But the doctors' current observations and opinions of radiological scans that will be presented to them, even if they are the same scans that they allegedly misread in 2013, are (or would be) the very epitome of expert opinion testimony-the expert's application of his specialized knowledge to diagnostic images that are presented for the purpose of eliciting an opinion as to what they portray. And because that is so, the relevant rule is the one that this court acknowledged in Stevens as a policy choice that the legislature had made in 1979: discovery of experts is not authorized in civil actions in this state. 336 Or. at 404, 84 P.3d 140.
The majority also relies on case law from other jurisdictions. Ransom , 363 Or. at 568-69, 425 P.3d at 421-22. But it is notable that the cases the majority cites rely on civil procedure rules that have not been interpreted as categorically barring discovery of experts, except as to factual matters within their personal knowledge based on involvement in the relevant events. If Oregon is an outlier in this matter, it is because that is what Oregon practice and Oregon's discovery rule-as interpreted by this court in two opinions that plaintiff does not seek to overturn-demand.[3]
**597 I recognize that, in a world that generally permits liberal discovery of the opposing party's case, it appears anomalous to place any limits on plaintiff's discovery of the doctors when she alleges that they were responsible for her injury. In federal practice, for example, FRCP 26(a)(2) now requires a party to disclose "the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705" and, unless a written report under FRCP 26(a)(2)(B) is required, to provide "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, 705" and "a summary of the facts and opinions to which the witness is expected to testify." FRCP 26(a)(2)(C). And, a party "may depose any person who has been identified as an expert whose opinions *437 may be presented at trial," FRCP 26(b)(4)(A), meaning any testifying expert, retained or not. It is especially difficult when, in similar circumstances, other jurisdictions have concluded that a percipient expert's current opinions are fair game for discovery, as noted by the majority. But the drift of judicial decisions made under entirely different statutes should not impel this court to set aside settled notions of Oregon's bar on expert discovery.
III. CONCLUSION
In my view, most members of the trial bench and bar would understand that, in presenting a radiologist with x-rays, CT scans, or other radiological images and then requesting his or her current professional assessment of what they show, the requesting party would be asking for the radiologist's current observations and opinions as an expert. Given the longstanding bar on expert discovery in Oregon and this court's decisions in Stevens and Gwin , discussed above, the expectation would be that any such request for the radiologist's current expert observations and opinions would be denied.
Nevertheless, the majority insists that Oregon's well-recognized bar on expert discovery is inapplicable in **598 the present circumstances, because the information being sought ultimately will be used to prove the nature of the perceptions and actions of the two doctors at the time of their participation in plaintiff's care and whether that care conformed to the required standard. The majority's recognition of such an exception and its application of ORCP 36 B(1), when there is nothing in Gwin or the longstanding interpretation of ORCP 36 B announced in Stevens that persuasively supports it, will be perceived as a departure from settled law-and one that is not driven by any true inquiry into the legislature's intent or that otherwise adds any new information that justifies undermining this court's precedents without expressly overruling them.[4]
Accordingly, I respectfully dissent.
Balmer and Duncan, JJ., join in this dissent.

I fill out the legislative history of ORCP 36 B below, 363 Or. at 587-91, 425 P.3d at 431-33, when I discuss this court's decision in Stevens .

In Stevens , the court was discussing statutory context for ORCP 36 B(1) when it explained:
"Another contextual clue [the other being the 1979 statute amending ORCP 36 B as promulgated] points in the same direction. ORCP essentially tracks FRCP 26(b), with one major exception. *** FRCP 26(b)(1) defines the 'scope of discovery' in much the same terms as ORCP 36 B(1). FRCP 26(b)(4) then specifically authorizes expert discovery. *** The presence of a specific provision authorizing expert discovery in FRCP 26 and the omission of a similar provision in ORCP 36 suggest that Oregon intended to depart from the federal model and not authorize expert discovery."
Stevens , 336 Or. at 402, 84 P.3d 140 (citations and footnote omitted).

Charles Burt made a similar observation in 1989 when he wrote opposing changes to ORCP 36 B to permit expert discovery:
"The argument that Oregon stands alone in its rule on the routine discovery of experts cannot be advanced as a reason for Oregon to change its rule. It might be more properly said that of all the jurisdictions, Oregon is the only one who has retained enough common sense to put an end to the unending discovery which seems to be the modern trend."
Burt, 50 No. 3 Oregon State Bar Bulletin at 7.

As a result of (1) the majority's rationale and holding in this case, (2) the low bar for logical relevance of evidence, and (3) the reach of ORCP 36 B(1), I foresee that the majority's decision will lead to routine discovery of-and discovery disputes concerning-experts who were actors in events relevant to the action, such as a plaintiff's treating doctor. For the same reasons, I question the majority's assertion that plaintiff would not be entitled to ask Bageac about, for example, "matters that plaintiff related and supplied to him, such as information about a third physician's treatment of plaintiff and studies on which that physician based her treatment." Ransom , 363 Or. at 567, 425 P.3d at 421. The majority holds that plaintiff is entitled to ask questions "to obtain all relevant, unprivileged information." Id. at 568, 425 P.3d at 421. It would come as no surprise if plaintiff's lawyer were able to articulate the relevance of questions about such information, and, in any event, irrelevance is normally not a basis for instructing a witness not to answer deposition questions.